221258 Allstate Insurance Company v. James Fougere et al. Good morning, Timothy K. Cutler. On behalf of the appellants, Mr. Fougere, Ms. Brody, Isabel, and ABI. And if it pleases the court, I request a two-minute rebuttal. Okay. Allowed. Thank you, Your Honor. This case is fundamentally, from our perspective, two issues. The first issue is whether or not Mr. Fougere and Ms. Brody-Isabel were independent agents under Massachusetts General Laws, Chapter 175, Section 163, and thus were entitled to be granted 180 days' notice of the termination of their agency contract. The second primary issue is whether or not Allstate met its burden of proof and set forth undisputed material facts that the spreadsheets or the driver information contained therein were A, a trade secret, and B, were the trade secret of Allstate. Addressing Chapter 175, Section 163 first, the language of Section, of Chapter 175, Section 163 provides that an independent agent is a person who is not employed by the carrier. And therefore, any independent agent must be given 180 days' notice prior to the termination of their agency contract. The Massachusetts legislature considered this such an important public policy matter that it would not permit any party to contract around this provision. In her findings, the district court found that Mr. Fougere and Ms. Brody-Isabel were independent contractors and not employees of Allstate. The court also found that there was no 180-day notice. However, the district court found because they were, in the court's opinion, an exclusive agent, they therefore were not independent. This decision went directly in contravention of both the language of the statute as well as the Nationwide case, which is a Massachusetts Supreme Court case, which specifically said that exclusive and American system agents, American system agents being non-exclusive, are deemed independent unless they are employees. But even if they're independent, they can be terminated for cause. You can terminate the contract for cause, but under the statute, you have to give 180 days' notice. And that's the key to this. So even if the epily were to prevail under the trade secret information, if they're independent agents, they would still get damages or whatever relief it's available for that. That's correct, Your Honor. And the district court did not even address, A, the language of the statute. The district court did not even talk about the Nationwide case. That was the primary case in our summary judgment motion. And in all states' response, they gave it one sentence. Rather, the district court talked about Arbella, and Arbella essentially upheld the Nationwide finding and said the American system was a qualifying term that was put in some of the sections of the insurance court code. And it essentially upheld the concept of Nationwide, that an exclusive agent is independent if they're not employed. Rather, the court went on to talk about Section 162F, which is about renewals. Who owns the renewals? And we're not disputing that before this Court, whether or not Mr. Forgé or Ms. Brody Isabel own the renewals of their agency contracts. It's whether or not they got 180-day notice. This Court relied on the Mets case, which is a New Jersey case, which concerns renewals. So it's concerning New Jersey insurance law, which is inapplicable, and renewals, which are inapplicable. Counsel, this was a summary judgment case. So what would be the issues, genuine issues, material fact that are out there that would require that this case be remanded for further proceedings and or trial? To be remanded, in fact, the Court should enter in favor of The other way around. The other way around, that there are no material facts. And that's what our belief is the Court totally didn't even want to discuss, for whatever reason, the motivation, get away from the motivation, could not discuss nationwide or the actual language. Because if you discuss it, you have to acknowledge that as a matter of law, there should have been 180-day notice. So you're saying that, again, no issues of material fact. It's an issue of law, and it was decided the wrong way. Yes, Your Honor. Thank you for saying it better than I. Okay. And essentially, the Court incorrectly substituted the American agency system term in replace of independent agent. And that is an error. That's the first issue that we're asking the Court to change. The second one is the trade secret. Well, the Court was trying to reconcile 162F. Yes. I said the Court was trying to reconcile 162F with 163. And that would, my humble, not disrespectful, that was just a rationale to get the Court to a point where it wanted to go. They're totally different sections. 162F concerns renewals. 163 concerns termination of agency contracts. So you could terminate the agency contract. Now you have the renewals. Who owns the renewals? And 162F concerns the ownership of renewals. We're not claiming we own the renewals in this appeal. That's not there. So she wasn't doing that. Two, the Massachusetts Supreme Court specifically chose where to put the American agency system in as quality language. It did in 162F and did not in 163. And the Arbella case said that was being a conscious effort by the legislature to insert that qualifying language in particular statutes. So, in fact, they are congruous. The Massachusetts Supreme Court. Counsel, may I, please? On the pure issue of law, I have to tell you I looked at it, as Judge Thompson just suggested. But is your argument that even if the all-state contract made your clients exclusive agents, as it obviously did, that nonetheless they are entitled to 180 days notice if they go and violate the contract by using trade secrets for other purposes? Okay, that is a hypothetical. And, yes, it does. They have to give the 180-day notice. And the Massachusetts Supreme Court said you cannot. I mean, the Massachusetts legislature said we're not going to give it, we're not going to contract her on it. Well, we'll read nationwide. But now I appreciate the clarification. So you say all exclusive agents are still entitled to 180 days notice, correct? That's correct, Your Honor. Okay. Now, moving on, it appears that these things really are trade secrets. What is your argument that a reasonable jury could find that they were not? That they were not trade secrets because the spreadsheets were prepared by Mr. Forgé. They were prepared based on information obtained from third parties, information that he purchased, and information that is publicly available as admitted both by the 30B witnesses of Allstate and by Mr. Forgé. There's no contrary evidence to that. I saw counsel that compilations of data that link A, B, C, D, and E, even if some of that comes from public sources, then can be trade secrets. Are you disputing that as a matter of law? I am disputing that. No, that is a true generalization. It can be. It doesn't automatically, A, make it a trade secret. No, no, the court did not say it automatically. It looked at all of the facts here as under our law it was required to do. So there's no legal error of application of impermissible standards. Yes, there is. Absolutely. Okay, what is it? The spreadsheets were not prepared by Allstate. If you look at every case and every time the situation occurs, Allstate provided the identity of the insurance when they got their insurance, some basic information about them, and importantly, the renewal dates. Isn't that true? No, and the evidence is absolutely contrary. Okay, what did Allstate not provide? Because he, we went through it, he went and obtained, he brought those with him. The court has found that the information came from alternative sources outside of Allstate. What information? He got them from LexisNexis. Excuse me, counsel, what information came from outside? LexisNexis got them from LexisNexis. No, no, no, what information, not what outside sources? Oh, renewals, the date, the name of the driver, addresses, policies, addresses, all that information was purchased from Leeds. It was purchased, it was accumulated from LexisNexis, R&V. Allstate uses, also uses LexisNexis to populate the declaration pages. The 30B6 witnesses all testified in unison. Yes, all this information is obtained from outside sources. Allstate could not identify where that information, what it came from, that it came from them. None of it came from their computer system. Their 30B6 witnesses all testified. It did not come from their computer system. But what about the contract, the exclusive contract? It cannot create a trade secret by contract. So you're saying that by a contract, I am going between two private parties and say the name of the insured. I'm going to turn that name of the insured into a trade secret and use it up against the world? Because once this court... But if it's a valid compilation and you're working as the exclusive agent of Allstate... You're confusing the court. This is perhaps the same thing, it's a confusing concept. You have to look at who compiled it, that's the trick. Were there resources used to compile that spreadsheet? And the normal situation you find is you have an employer-employee situation where the employee is working for the employer and they put together a list of customers. And the employer has put resources into putting that list together. The individual information in that list is not a trade secret. But it's the compilations you're saying. But it's the employer spending the resources. Once you spend the resources, you've got an independent economic value being put into that. That was not compiled. That list was not compiled by Allstate. These were exclusive... Technically under the contract, they're not exclusive because it says specifically under the contract they're not exclusive. They're independent agents running their own agencies collecting this information to build up their agencies. They're not an employer-employee situation where they're working for an employer. They're distinct and separate from Allstate. I'm sorry, I'm babbling now. Okay. Counsel, you have two minutes for rebuttal, so let's hear from opposing counsel now. Thank you. Thank you. At this time, Attorney Humphrey would introduce himself on the record to begin. Thank you, Your Honors. And may it please the Court, Scott Humphrey on behalf of Allstate. Why don't I just cut to the chase and work off of the questions that the panel was asking. First off and foremost, under the Federal Defend Trade Secret Act, as well as Massachusetts law that was later codified into the Massachusetts Uniform Trade Secret Act, compilations can be trade secrets. That's also the Optus case that we cite, too. In addition, the defendants, Mr. Faugere and Ms. Brody-Isabel, collected that information while they were agents of Allstate. They were paid commissions for doing so. So even if they're doing it on their own, on the side, and looking at outside sources, the fact that they're doing it, that runs in the trade secret? That is part of the criteria, and just as a rebuttal to Mr. Cutler's comments, that because they personally collected that information, it's their information. No, that's not the case, because this is Allstate information identified under Section 4D of the Exclusive Agency. I assume they could also have been collecting it for Allstate. Correct. And they were in those spreadsheets for Allstate, not for themselves. Right, and that's what they were. They were collecting that information for Allstate so that Allstate had that information to know when the Allstate customer policies were coming up, what the renewal information was, what the expiration information was, what the customer's names, addresses, phone numbers, contact information, all that information is identified as confidential information under Section 4D of the contract. It's also identified, it's a compilation under the Federal Defense Trade Secrets Act, Massachusetts law, the Optus case, and now even the Massachusetts Uniform Trade Secrets Act that was enacted after this case began. In addition to that, Your Honors, where there is a distinct, you know, discrepancy here is for the first time I'm hearing that they're not arguing that the renewals are owned by them. That was the whole heart of one of the key parcels of their brief was that, no, we own this information. This is our information. But that's not what the contract says. More importantly, with respect to trade secrets, again, they were operating as our agents. Now, there was this comment that was just made about, well, no, they're independent agents. If you look at the contract where the term independent comes into is with respect to them operating their own agency. They're allowed to hire their staff as they choose. They're allowed to operate their hours as they so choose. But with respect to confidential information, it's clear that that information is owned by Allstate regardless of form. And the witness testimony wasn't that Allstate said this wasn't their information. The witness testimony was, this is what we expect our agents to do. We expect them to go out, sell policies, land customers, and those customer information under the contract goes directly to Allstate confidential information at Allstate. Let me ask you, assuming you're right on the law, aren't there or are they or aren't they any issues of material fact still, you know, out there? Or it's something that there's no issues and there's no dispute as to the facts? Is it just a plain application of law or should we have to remand even if you're right on the law for further fact-finding? No, Your Honor, because the facts that the court relied on to achieve summary judgment on behalf of Allstate with respect to breach of the confidentiality provisions of the agreement as well as a violation of Massachusetts trade secret law and violation of the Federal Trade Secret Act are undisputed. Namely, this is Allstate's confidential information. That's undisputed. It's clear on the contract. And you have to have competent evidence, not any evidence that I can pluck out of thin air in order to respond to summary judgment. That's disputed. There is reasonable measures that were taken that the court sided to with respect to the protection of the confidential information. We know that they breached the agreement because they admit to keeping it afterwards. They admit to keeping four spreadsheets, two of which were destroyed while it was still in their possession, custody, and control while this case was pending. But with respect to the TU-Auburn, the TU-Framingham, the Allstate-Auburn, the Allstate-Framingham, and by the way, Mr. Brody's agency was in Framingham or in Auburn, Ms. Brody Isabel's was in Framingham. That confidential information, they admit to using. Because they said in the case, well, this is our information, of course we used it after you left. So you have undisputed facts that Judge Dean relied on in granting summary judgment. These other issues, which I would even contest, aren't competent evidence, but it doesn't matter with respect to the key material facts that the judge relied on. There's no issue of material fact that would reverse that decision. Let me correct me if I'm wrong, but I'm looking at the statement of issues on appeal for the appellant. There are some, the appellant is arguing that the district court is a matter of law, but I don't see any, and this is something a rebuttal counsel can address, but I don't see there's any issue, there was genuine issues out here. So nobody's raising, nor are you, let me have your client or the appellants, that there's issues of fact. Correct. We are not asking there's any material issue of fact. It does seem from the way they wrote their briefs, both the opening brief and the reply brief, that they were raising issues of fact. We don't think there were, so that was just an impression. Okay, but there's no issue as far as I can see. It's like there were genuine issues of material fact out there. The court should have not granted summary judgment. That is not like any other issue. There's arguments that can go into that, but no specific issue. Correct. Yes, Your Honor. Would you like to address Nationwide, please? Yes, Your Honor, because that falls into what we're talking about with the trade secret acts. If you look at Nationwide, the 1987 case, and admittedly there is very scant case law in Section 163, but as the case law notes, you look at the design, structure, purpose, and language, and you cannot evaluate the statute in a vacuum, which is why Judge Dean correctly looked at all of Chapter 175, including Section 162F. I believe she also looked at Sections 162D and E. But when you look at this, it is clear that those statutes and Chapter 175 apply to the independent contractors, those that are allowed to sell insurance through multiple carriers. And that would make sense because then when you read Section 163F, it's talking about renewals. It's talking about, okay, if you have this ownership right in the renewals, then Section 163 applies because you're an independent contractor and that ownership right is taken away from you, and the referees, the three referees that are appointed, basically decide if that's correct or not. Well, that's not the issue here because the renewals are specifically identified in Section 4D as all states' property. And an exclusive agent, an agent that is also known as a captive agent, never owns those renewals. So there is no application to Section 163, and that's what the Arbella case cites to and talks about, about how, listen, there is two different systems here. There is the captive system or the employee system where you sell insurance for just one company. That's what we have here. That's all state. There is the other system where you are an independent agent, which means you can sell Travelers. You can sell Safeco. You can sell Geico. You can sell State Farm. You can sell Nationwide. You can sell a multiple of insurance policies to multiple different carriers, and that's why the renewals are so important and the ownership of those renewals is so important. And that's why the ownership of the renewals under the captive situation is owned by the company, and that's why Section 163 does not apply to Mr. Faugere or Ms. Brody-Isabel. And what you do and what we did in this case is, because of the Scant case law, we looked outside of Boston, outside of Massachusetts, to look for other cases, and that's the Met's case that we discussed in Maryland where it's exactly what we talk about here, that there's two systems in the insurance industry with respect to agents. And unfortunately for Mr. Faugere and Ms. Brody-Isabel, they fall into the captive agents because by everybody's agreement, they were only allowed to sell Allstate products or Allstate-approved products. In the final moments, I should mention, Judge Gelby, just because you mentioned it, Judge Dean did not raise the, did not find about whether even 180 days would apply to terminated agents who are terminated for cause. She specifically noted in a footnote that she wasn't addressing that decision. We personally obviously agree with Judge Dean. There was no need to address that because, again, Ms. Brody-Isabel and Mr. Faugere were not Allstate, I'm sorry, were not independent agents. They were Allstate-exclusive agents and therefore. Let me ask you, even if they're independent agents and they're doing what they're doing allegedly with the trade secrets, even to term, under theories, even to terminate them, there's going to be 180 days, correct? Correct. But, well, if they were applicable under the statute, and they're not for the reasons we just talked about, but theoretically, if they were, it would have to be remanded back to the court to see, A, did they comply with the section? And, B, would they even be entitled to 180 days if there was a termination for cause? And would it make sense for somebody to steal Allstate confidential information, use it in a competing business? That was my question, because if the 180 days are not running, then unless somebody gets an injunction or something, then the problem is they can continue to get the trade secrets and do whatever they want. Right, exactly, correct, is that then they would be able to benefit further and further and further from their theft. Okay. So in the last 14 seconds I have, I would just also state that the court's decision with respect to the award for attorney's fees should also be upheld, as should the court's rulings with respect to Chapter 93A. It's clear under both the Weiler case as well as the Benoit case that Section 93 only applies to commerce and trade, not private actions like there was here. Thank you, counsel. Thank you. Does my colleague have any further questions? I see no showing of hands, so thank you very much. Then rebuttal, two minutes. Thank you, Your Honor. Tim Cutler again. Just quickly, I don't quite understand the last point, but if the contract was 180 days or to give 180 days notice of it, they could stop doing business with the agent, they just have to continue paying the commissions for that remainder of 180 days. It doesn't mean that they have to continue to allow them to replace policies or anything else. So what you're saying is any pending commission would have to be paid, but no new work. That's correct. The problem, if you find that this is a trade secret, it's going to allow anybody to create a trade secret through private means. The contract does not say this is. It says these are the things that could be all states' trade secrets. The first thing that has to be determined is, is it in fact all states' trade secret, and then was it taken in breach of the contract? The parties cannot identify someone's personal information as its trade secret, as all states are trying to do here, saying we own that driver's name. And it is lots of factual. Where did this information come from? The court specifically stated, the district court, that for purposes of summary judgment, the information came from Mr. Borges. But again, for the court, it will have ramifications across contracts across the board. People entering the contracts and saying, as Judge Young said, just putting labels on saying this is a trade secret, this is a trade secret, this is a trade secret. And then all of a sudden, all the parties out there, private parties are creating trade secrets through private contracts that they can enforce against the board. It's not just going to be all states can enforce this against Mr. Borges. They can enforce this against Sally, George, Henry, Smith Insurance. Okay. Thank you, counsel. Thank you. You're excused.